# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

SCELIA ROBINSON,

       Plaintiff,

  v.

THE STATE OF GEORGIA; AMITY HOUSE;
JEFFREY ARNOLD; MISTY REANNA; P.A.;
GLYNN COUNTY JUVENILE COURT; TRI-
COUNTY PROTECTIVE SERVICE
DIRECTOR; INSPECTOR GENERAL OF
GEORGIA; SECRETARY OF STATE OF
GEORGIA; CARENET OF BRUNSWICK,
GEORGIA; SHERRY JENKINS TUCKER,
Consumer M.H. Network of Georgia; JACK
KINGSTON; JASON NUNEZ; GEORGIA
COALITION FOR DOMESTIC ABUSE; ANN
D. POPE, DHR/DHS; B.J. WALKER, Previous
DHS Commissioner; DEB FARRELL, DHS;
AYONNA JOHNSON, Women's Resource to
End Domestic Violence; LIBERTY COUNTY
CHILD SUPPORT; LIBERTY COUNTY
DISTRICT ATTORNEY'S OFFICE; JOHN
BASSETT, Housing Trust Fund for the
Homeless; DEPARTMENT OF COMMUNITY
AFFAIRS; NAMI, GEORGIA; SAMHSA,
GEORGIA; MENTAL HEALTH AMERICA
FOR GEORGIA; JEANNETTE BACON, Dept.
Of Community Health, Georgia; CHATHAM
COUNTY DFCS; LIBERTY COUNTY DFCS;
STATESBORO COUNTY DFCS; CAMDEN
COUNTY DFCS; SERENITY HOUSE
LIBERTY; PATRICIA HOLLOWAY;
ROOSEVELT FREEMAN; GEORGIA OFFICE
FOR STATE ADMINISTRATION HEARINGS;
FAMILY VIOLENCE UNIT, DHS; LEIGH
GUY, Gateway BHS; DR. BONETTI, Gateway
BHS; CANDY GRAHAM, Gateway BHS;
SHEILA FORD, Gateway BHS; CEPEDA
MOORE, Gateway BHS; DR. CHERYL
MCKENZIE; MARY KING; BARBARA

CIVIL ACTION NO.: 2:13-cv-66

MEYERS; GATEWAY, Transitional Child Care Staff; AMY LNUN, Counselor; JUDY LNUN, Counselor; PAM LNUN; CHERELLE LNUN; KELLI LNUN; LEIGH MELTON; GREG GIHDAN, Glynn County Head Social Worker; SLOANE MALLOY, Counselor, Glynn Middle School; AUDREY CHAPMAN, Attorney, Glynn County; JOHN PRICE, Attorney, Glynn County; FRANCES DYAL, Attorney, Glynn County; STATE OF GEORGIA ACCOUNTING OFFICE; KIDSNET OF GLYNN COUNTY; CAGLE, Lt. Governor; SUSAN GOODMAN; CHERYL HUGHES; PAULA FOERSTEL; MELINDA GRAHAM; IRENE MCCALL; DAWN O'NEAL DELOACH; GREG MCCONNELL; MRS. MASSEN; TORRENCE SLAUGHTER; KATIE JO BALLARD; DAHLIA BELL BROWN; BULLOCH COUNTY DFCS; and YVONNE DAVENPORT,

Defendants.

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff filed this lawsuit pro se on May 6, 2013, asserting numerous allegations against several individuals, organizations, and governmental entities.[1]  Plaintiff's allegations and amendments thereto are far reaching and at times difficult to follow.  However, at their heart, Plaintiff's claims call into question the Glynn County Juvenile Court's removal of Plaintiff's children from her custody.  As a remedy, Plaintiff requests, among other things, compensatory and punitive damages as well as the return of her children to her care and custody.  (Doc. 1,

---

[1]  The Complaint also named Zack Lyde as a Plaintiff.  However, Lyde has since been dropped as a party to the case.  (Doc. 140, pp. 3-4.)  In a recently filed pleading, Plaintiff stated that she is unaware of what Defendants remain in the case.  (Doc. 146, pp. 7–8.)  This Report and Recommendation lays out those Defendants that have been dismissed from this case by previous Orders of this Court.  The above caption of this Report and Recommendation lists the only remaining Defendants in this case.  Plaintiff also complains that she is unaware who represents certain Defendants.  However, as explained below, Plaintiff has not served any of the remaining Defendants with this lawsuit, and, therefore, they have no obligation to enter appearances in this case.  So that Plaintiff can be further apprised of the history and status of this case, the Clerk of Court is **DIRECTED** to forward Plaintiff a copy of the updated docket sheet.  (Doc. 1,

p. 11.) From Plaintiff's filings, it is readily apparent that she sincerely believes that her children have been wrongfully and unlawfully removed from her custody. However, it is equally apparent that Plaintiff cannot obtain the relief she seeks in this Court. Her remedy, if any, must be obtained in the state court system.

Accordingly, for the reasons set forth more fully below, I **RECOMMEND** that the Court **DISMISS** all claims asserted against all remaining Defendants in this case. Additionally, the Court should **DENY** Plaintiff's Motion to Appear Before the Court and be Granted a Jury Trial as moot and **DENY** Plaintiff leave to appeal *in forma pauperis*.[2]

## BACKGROUND

Plaintiff Scelia Robinson filed this pro se action against over one hundred (100) individuals and entities on May 6, 2013. (Doc. 1.) Therein, she made general allegations that individuals, organizations, and agencies, including the Glynn County Juvenile Court, have committed violations of federal and state law. (Id. at pp. 8–9.) Plaintiff's Complaint did not detail the facts or procedural history of her family's case before the Glynn County Juvenile Court. However, as the Court previously explained, from a "generous reading" of Plaintiff's Complaint and Amended Complaint, "the Court can conclude that the Complaint seeks to redress

_____

[2] A "district court can only dismiss an action on its own motion as long as the procedure employed is fair. . . . To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted). A Magistrate Judge's Report and Recommendation ("R&R") provides such notice and opportunity to respond. See Shivers v. Int'l Bhd. Of Elec. Workers Local Union, 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating that a party has notice of a district court's intent to sua sponte grant summary judgment where a magistrate judge issues a report recommending the sua sponte granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting that R&R served as notice that claims would be sua sponte dismissed). This Report and Recommendation constitutes fair notice to Plaintiff that her suit is barred and due to be dismissed. As indicated below, Plaintiff will have the opportunity to present her objections to this finding, and the District Court will review de novo properly submitted objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Glover v. Williams, No. 1:12-CV-3562-TWT-JFK, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining that magistrate judge's report and recommendation constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

the removal of Robinson's children from her custody and alleged procedural deficiencies that occurred during hearings leading to and occurring after the children's removal. Rather than be provided due process, Robinson believes that various defendants conspired to deprive her of her parental rights, 'no matter what.'" (Doc. 107, p. 6.)[3] After Magistrate Judge James E. Graham denied Plaintiff's Motion to Proceed *in Forma Pauperis*, (doc. 5), Plaintiff paid the filing fee and filed an Amended Complaint, (doc. 6). That Amendment listed additional Defendants and laid out more allegations that the Glynn County Juvenile Court mishandled Plaintiff's deprivation of parental rights case. (Id.)

Plaintiff's Complaint, as amended, is a "quintessential example of a shotgun pleading, which the Eleventh Circuit has admonished for well over two decades." (Doc. 140, p. 7) (citing Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001)). The parties and the Court have requested that Plaintiff provide a more definite statement of her claims on numerous occasions. On August 20, 2013, the Court ordered Plaintiff to submit a filing stating: "1) which Defendants are alleged to have violated the Plaintiffs' rights; 2) specific allegations against each Defendant; and 3) the rights each Defendant allegedly violated." (Doc. 74, p. 5.) Rather than comply with those directives, Plaintiff moved to recuse the Magistrate Judge then assigned to this case. (Doc. 75.)

The Court has issued several Orders dismissing numerous Defendants from this action.[4] In its Order of February 18, 2014, the Court first granted the Motions to Dismiss of the following Defendants: Cary Greenfield, (doc. 15); John P. Rivers, (doc. 20); Leslie Hartman, Jeannie

---

[3] A full summary of the proceedings following Plaintiff's Complaint and Amended Complaint (as well as a more complete recitation of Plaintiff's allegations) can be found in the Court's Order of February 18, 2014. (Doc. 107, pp. 6–7.)

[4] It is important to note that as to each of these Motions to Dismiss, the Court has issued an Order notifying Plaintiff of the Motion and her obligation to respond and providing Plaintiff ample opportunity to contest the Motion. (See, e.g., Doc. 31.)

Roberts, and Safe Harbor Children's Center, (doc. 22); Joyce Campbell, (doc. 38); Liberty County Children's Home, Inc. d/b/a Gabriel's House, James N. Osteen, Jr., Tammy Kersey, and Janice Relaford, (doc. 39); Mary Hogan-Torres, (doc. 40); Camden County CASA, (doc. 71); Joseph's Home for Boys, (doc. 79); as well as Martin Rowe and the "United States Attorney's Office of Georgia." (Doc. 107, pp. 7–14.) The Court primarily based its dismissal of all claims against these Defendants on the <u>Rooker-Feldman</u> doctrine and <u>Younger</u> abstention. (<u>Id.</u>at pp. 7–11.) The Court explained that this lawsuit is "based on a state-court determination depriving Robinson of custody over her children. The other claims, to the degree they could be treated distinct from direct challenges to the proceeding and its outcome, appear all to arise from the proceeding and be intimately connected thereto." (<u>Id.</u> at p. 9.) The Court explained that, to the extent a final judgment was entered in the juvenile court proceeding, the <u>Rooker-Feldman</u> doctrine prevents this Court from disturbing that state court judgment. (<u>Id.</u> at pp. 7–9.) Additionally, the Court held that, to the extent the juvenile court case was still pending, <u>Younger</u> abstention prevented this Court from interfering with that ongoing state proceeding. (<u>Id.</u> at pp. 10–11.)

The Court's February 18, 2014, Order also dismissed all claims against Defendant Ernest Gilbert for insufficient service of process. (<u>Id.</u> at pp. 14–16.) The Court explained that Plaintiff failed to comply with Rule 4 of the Federal Rules of Civil Procedure as to Gilbert. <u>Id.</u>

The Court also granted summary judgment to Defendants Judge George Rountree, Donita Taylor, Susan Ponsell, and Jill Caldwell in its February 18, 2014, Order. (<u>Id.</u> at pp. 16–20.) The Court explained that Defendant Rountree, as a judicial officer, was entitled to judicial immunity from Plaintiff's claims and that Defendants Taylor, Ponsell, and Caldwell were protected from Plaintiff's claims by quasi-judicial immunity. <u>Id.</u>

On March 18, 2015, the Court granted Defendant Jim Chamberlin's Motion to Dismiss for failure to state a claim. (Doc. 135.) The Court reasoned that, "[b]eyond conclusory assertions of legal violations, Plaintiffs proffer no averments showing a plausible claim for relief, under any of their 40-plus theories of liability." (Id. at 3.) Specifically, the Court held that the Complaint did not give any indication of what, if anything, that Chamberlin allegedly did wrong. Id. Accordingly, the Court dismissed all claims against Chamberlin.

The Court issued another dismissal Order on April 28, 2015. (Doc. 138.) Therein, the Court granted two Motions to Dismiss: Document Number 112, filed by Defendants CASA Glynn, Inc., and Lynda Tye; and Document Number 130, filed by Defendants Gil and Carrie Murray Nellis. As to Defendants CASA Glynn and Lynda Tye, the Court ruled that Plaintiff had failed to serve those Defendants as required by Federal Rule of Civil Procedure 4 despite the fact that the case had been pending for more than 700 days. (Doc. 138, pp. 8–9.) As to Defendants Gil and Carrie Murray Nellis, the Court found that Plaintiff had failed to state a claim against those Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6). (Id. at p. 10–11.) The Court explained that "the only specific allegations in the Complaint are against Glynn County Juvenile Court, the State of Georgia, an unidentified DFCS worker, and Judge Rountree." (Id. at p. 10.) Plaintiff's failure to allege what the Nellises had done wrong resulted in the dismissal of all claims against them. (Id. at p. 11.)

On May 20, 2015, the Court issued another Order, (doc. 140), granting two Motions to Dismiss: the first filed by Defendants Peggy Sorrells, Norris Smith, Frank Bonati, Clyde Reese, Frank Berry, Chuck Pittman, Amanda Chapman, Vicki Riggins, LaSharn Hughes, Bobby Cagle,

Mary Skelton, Mike Beatty, and David Cook[5], (doc. 111); and the second filed by Defendant J. Alexander Atwood, (doc. 136).

In granting the Sorrells Defendants' Motion to Dismiss, the Court recounted that Magistrate Judge Graham's August 20, 2013, Order "plainly told Plaintiff what she needed to do to bring her Complaint into compliance with the Federal Rules of Civil Procedure." (Doc. 140, p. 6.) The Court went on to hold that Plaintiff had failed to comply with that directive, and, therefore, Defendants were not able to respond to her Complaint. Id. Consequently, the Court dismissed all claims against the Sorrells Defendants pursuant to Federal Rule of Civil Procedure 41(b) and this Court's Local Rule 41.1. (Id. at p. 5–6.)

As to Defendant Atwood, the Court held that, "[e]ven under the liberal standard under which pro se complaints are interpreted, the allegations in Plaintiff's Complaint are conclusory, speculative, unspecific, and fall short of the standard for alleging a plausible claim for relief." (Id. at p. 8.) Given the fact that these flaws existed even after the Court had ordered Plaintiff to provide a more definite statement of her claims, the Court dismissed all claims against Defendant Atwood. Id.

Citing this procedural history, on September 2, 2015, the Court issued an Order directing Plaintiff to show cause why her claims against all remaining Defendants should not be dismissed. (Doc. 144.) The Court noted that in the two years since the Court's August 20, 2013, Order, Plaintiff had entirely failed to comply with the Court's directive to provide a more definite statement of her claims. Id. Accordingly, the Court ordered Plaintiff to "specifically explain in her response why she has not complied with the Court's directives included in the August 20, 2013[,] Order." Id. at p. 5. Furthermore, the Court ordered that "Plaintiff must state in her response: (1) which of the remaining Defendants violated Plaintiff's rights; (2) specific

---

[5] The Court will refer to these 13 Defendants as "the Sorrells Defendants."

allegations against each remaining Defendant; and (3) the rights each remaining Defendant allegedly violated." <u>Id.</u>

Plaintiff filed a response to the show cause Order on September 16, 2015. (Doc. 145.) However, rather than complying with the Magistrate Judge's directives to clarify her claims for relief, she only further muddied the waters. Plaintiff made unsupported claims that this Court has mishandled her case, including claims that Magistrate Judge Graham should have been recused from this action. (<u>Id.</u> at pp. 3-4.) Plaintiff argued, "I have already done this, I have stated my claims." (<u>Id.</u> at p. 6.) Additionally, she continued to make conclusory allegations against Defendants without specifying which remaining Defendants violated which of her rights, much less how those rights were allegedly violated. (<u>See, e.g.</u>, <u>id.</u> at p. 15) ("It is no secret that there are powerful forces in GA State government, in Brunswick, and all the cities and counties that have participated in abusing and holding my children hostage all the while orchestrating the cover-ups and retaliatory actions against my children and me.")

## DISCUSSION

Two years of pleadings by Plaintiff reveal that, though her beliefs are sincerely held, they do not form the basis for relief in this Court. The numerous principles of law that the Court has cited in it prior dismissal Orders apply with equal force to the remaining Defendants. Plaintiff's claims fall outside the limited jurisdiction of this Court. This Court cannot act as an appellate court for the decisions of the Glynn County Juvenile Court. Indeed, principles of comity and deference prevent this Court from inserting itself into state court proceedings. Accordingly, Plaintiff's remedy, if any, must lie in the state court system. Furthermore, despite the fact that this lawsuit has been pending for over two years, Plaintiff has not served any of the remaining Defendants. Moreover, the Court has given Plaintiff several opportunities to clarify which

Defendants she seeks to sue and to state plausible claims against those Defendants. However, she has not complied with those Orders. While each of these principles independently warrants the dismissal of the remaining claims, this Report and Recommendation discusses all of them in the spirit of completeness and fair notice.[6]

In its discussion, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## I. Dismissal Pursuant to the <u>Rooker-Feldman</u> Doctrine and <u>Younger</u> Abstention.

This Court, like all district courts of the United States is a Court of "limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005) (quoting Kokkonen v.

---

[6] Additionally, there are several legal principles that bar Plaintiff's claims as to some Defendants. For example, the Eleventh Amendment to the United States Constitution bars Plaintiff's claims against the State of Georgia as well as her official capacity claims against state officials, employees, and agencies. A lawsuit against a state agency in its official capacity is no different from a suit against a state itself; such a defendant is immune. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). In enacting Section 1983, Congress did not intend to abrogate "well-established immunities or defenses" under the common law or the Eleventh Amendment. Id. at 67. Additionally, Plaintiff levies many allegations against private actors. In order to establish a claim under Section 1983, a plaintiff must allege that an act or omission depriving her "of some right, privilege, or immunity secured by the Constitution or laws of the United States" was committed by "a person acting under color of state law." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). The state-actor requirement traditionally precludes suit against a private party under this Section, and a private party may qualify as a state actor for Section 1983 purposes only in "rare circumstances." Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992). However, because ample alternative reasons exist for dismissal of Plaintiff's claims against all remaining Defendants, the Court need not delve into these issues that only apply to some Defendants.

<u>Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994)). It possesses only that power authorized by the Constitution and by Congress. <u>Id.</u> Moreover, Plaintiff bears the burden of establishing that her claims fall within this Courts' subject matter jurisdiction. <u>Kokkonen</u>, 511 U.S. at 377 (because federal courts are courts of limited jurisdiction "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]").

### A.     **Rooker-Feldman**

Pursuant to the <u>Rooker-Feldman</u> doctrine, the Court is without jurisdiction over claims which essentially seek review of a state-court judgment. "The <u>Rooker-Feldman</u> doctrine derives from <u>Rooker v. Fidelity Trust Company</u>, 263 U.S. 413 (1923), and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983), and provides that, as a general matter, federal district courts lack jurisdiction to review a final state court decision." <u>McCorvey v. Weaver</u>, No. 15-10470, 2015 WL 5751756, at *1 (11th Cir. Oct. 2, 2015). Nor, under the <u>Rooker-Feldman</u> doctrine may a federal court "decide federal issues that are raised in state proceedings and 'inextricably intertwined' with the state court's judgment." <u>Datz v. Kilgore</u>, 51 F.3d 252, 253 (11th Cir. 1995) (quoting <u>Staley v. Ledbetter</u>, 837 F.2d 1016, 1018 (11th Cir. 1988)). A federal claim is "inextricably intertwined" with a state-court judgment if the claim would "effectively nullify" the state-court judgment or if the claim "succeeds only to the extent that the state court wrongly decided the issues before it." <u>Goodman ex rel. Goodman v. Sipos</u>, 259 F.3d 1327, 1332–33 (11th Cir. 2001) (quoting <u>Siegel v. LePore</u>, 234 F.3d 1163, 1172 (11th Cir. 2000)). However, even if a claim is inextricably intertwined with the judgment in state court, "the doctrine does not apply if the plaintiff had no 'reasonable opportunity to raise his federal claim in state proceedings.'" <u>Id.</u> (quoting <u>Powell v. Powell</u>, 80 F.3d 464, 467 (11th Cir. 1996)).

"Rooker-Feldman applies because, among the federal courts, Congress authorized only the Supreme Court to reverse or modify a state court decision." Helton v. Ramsay, 566 F. App'x 876, 877 (11th Cir. 2014) (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). Put succinctly, this Court is not an appeals court to which a losing or disgruntled state court party can appeal an unfavorable decision.

The Court explained in its February 18, 2013, Order that Plaintiff's claims appear to challenge the Glynn County Juvenile Court's judgment depriving her of custody over her children as well as issues inextricably intertwined with that proceeding. (Doc. 107, p. 9.) The Court also noted that Plaintiff had the opportunity to raise the constitutional challenges she asserts in this case in the juvenile court and on appeal. Id. Thus, the Court held that, to the extent a judgment has been entered, Plaintiff's claims are barred by the Rooker-Feldman doctrine. (Id. at p. 10.)

The Court's ruling in this regard is not unique to this case. This Court and other federal courts frequently find that the Rooker-Feldman prevents federal courts from hearing claims based on a state court's custody determination or parental rights termination. See, e.g., Goodman, 259 F.3d at 1334 (finding that the Rooker-Feldman doctrine barred jurisdiction over the plaintiffs' due process claims against state officials because the success of those claims would require finding that the state court wrongly decided to terminate the plaintiffs' parental rights and wrongly denied their petition for return of custody); Taylor v. Randolph, 594 F. App'x 578 (11th Cir. 2014) (Rooker-Feldman doctrine barred mother's claims against state court judges and employees of sheriff's office and child protection agency, alleging that defendants' decisions in child-custody proceedings and child well-being matters violated her and her child's fundamental rights); Plunkett v. Rountree, No. CV214-015, 2015 WL 1505970, at *12 (S.D. Ga.

Mar. 31, 2015) (dismissing claims based on juvenile court's removal of plaintiff's children, the litigation in juvenile court, or the treatment of her children in foster care); Daw v. Cowan, No. 3:11CV96/RV/EMT, 2013 WL 5838683, at *5 (N.D. Fla. Oct. 30, 2013) ("[T]o the extent Plaintiff seeks review of any final judgments issued by the state court, including those that terminated her parental rights, this court lacks jurisdiction over the matter."). Further, the Eleventh Circuit has "also determined those officers and other government personnel acting pursuant to, or in concert with, child-custody or child well-being proceedings fall within the Rooker-Feldman doctrine because their acts are inextricably intertwined with state court judgments." Taylor, 594 F. App'x at 580 (citing Goodman, 259 F.3d at 1334.)

As this Court has previously determined, Plaintiff's claims either directly challenge the juvenile court proceeding and its outcome or arise from that proceeding and are intimately connected thereto. (Doc. 107, p. 9.) Thus, Plaintiff essentially asks this Court to sit as an appellate court overseeing the Glynn County Juvenile Court and its decisions. Pursuant to the Rooker-Feldman doctrine, this Court cannot fill such a role, and Plaintiff's remedy must lie in the state court system.

**B.      Younger Abstention**

To the extent that the juvenile court proceeding has not yet resulted in a judgment, this Court still lacks jurisdiction to hear Plaintiff's claims. The Younger abstention doctrine reflects "a strong federal policy against federal[ ] court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). Where "vital state interests" are involved, a federal court should abstain from hearing a case "unless state law clearly bars the interposition of the constitutional claim." Id. at 432 (quoting Moore v. Sims, 442 U.S. 415, 426 (1979)). To

determine whether <u>Younger</u> requires abstention in a given case, a federal court must ask three questions: "first, do the proceedings constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges." <u>31 Foster Children v. Bush</u>, 329 F.3d 1255, 1274 (11th Cir. 2003) (quoting <u>Middlesex Cty.</u>, 457 U.S. at 432). If the answer to all three questions is "yes," then a federal court must abstain from hearing a case in order to avoid interfering with the ongoing state-court proceedings.

Again, the Court's February 18, 2013, Order is instructive. (Doc. 107, pp. 10–11.) As the Court explained therein, to the extent that the juvenile court proceeding was ongoing at the time Plaintiff filed this lawsuit, that proceeding qualifies for <u>Younger</u> abstention, and this Court must abstain from interfering with the juvenile court.[7] <u>Id.</u> The Court's ruling is once again not unique to this case. This Court and other federal courts frequently find that <u>Younger</u> abstention prevents a federal court from interfering with an ongoing state court custody or deprivation proceeding. <u>See, e.g.</u>, <u>Plunkett</u>, No. CV214-015, 2015 WL 1505970, at *12–14 (dismissing claims for injunctive relief due to alleged due process and equal protection violations by juvenile court in removal of plaintiff's children); <u>Daw</u>, No. 3:11CV96/RV/EMT, 2013 WL 5838683, at *5 ("To the extent the state court [custody] proceedings were indeed pending at the time [plaintiff] filed the instant lawsuit, her cause of action is clearly subject to dismissal pursuant to the <u>Younger</u> abstention doctrine.") If Plaintiff's family case was still pending before the Glynn County Juvenile Court when she filed this action, <u>Younger</u> abstention prevents the Court from exercising jurisdiction over her claims.

---

[7] Since that Order, Plaintiff has not clarified whether a final judgment has been filed in the juvenile court. Nonetheless, as the Court previously explained, to the extent a final judgment has been entered, the <u>Rooker-Feldman</u> doctrine bars Plaintiff's claims, and to the extent a judgment has not been entered, <u>Younger</u> abstention bars the claims. (Doc. 107, p. 11 n.5.)

Because Plaintiff's claims against all Defendants seek review of the Glynn County Juvenile Court's custody deprivation proceedings and related actions, this lawsuit falls outside of this Court's subject matter jurisdiction. Consequently, the Court should dismiss all of Plaintiff's remaining claims.

## II.     Dismissal for Failure to Timely Serve Remaining Defendants

As noted above, this Court has already dismissed Plaintiff's claims against Defendant Ernest Gilbert for insufficient service of process, (doc. 107, pp. 14–16), and Defendants CASA Glynn and Lynda Tye for failure to effect timely service, (doc. 138, pp. 8–9). As the Court explained in those Orders, Plaintiff's obligation to timely serve the Complaint is governed by Federal Rule of Civil Procedure 4(m), which provides:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Good cause for failure to timely serve "exists only when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." Lepone-Dempsey v. Carroll Cty. Comm'rs, 476 F.3d 1277, 1281 (11th Cir. 2007) (alterations omitted) (quoting Prisco v. Frank, 929 F.2d 603, 604 (11th Cir. 1991)). Further, "[t]he serving party bears the burden of proof with regard to its validity or good cause for failure to effect timely service." Profit v. Americold Logistics, LLC, 248 F.R.D. 293, 296 (N.D. Ga. 2008) (citing Sys. Signs Supplies v. United States Dep't of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990)).

This case has been pending for approximately 950 days. However, despite that lengthy passage of time and the Court repeatedly apprising Plaintiff of her obligation to serve Defendants, it appears that none of the remaining Defendants have been served. The only record

that Plaintiff has attempted to serve any of the remaining Defendants are summonses that were returned unexecuted as to Audrey Chapman, (doc. 63), Frances Dyal, (doc. 60), and Mrs. Massen, (doc. 62). However, even these records reveal that these three Defendants were not served with this suit. The fact that Plaintiff has not served the remaining Defendants provides additional ground for dismissal of this case.

## III. Dismissal for Failure to State a Claim

The Court has dismissed Plaintiff's prior claims against a number of Defendants for failure to state a claim. (Doc. 107, pp. 11–14; Doc. 135, p. 3; Doc. 138, pp. 9–10.) As the Court explained in its April 28, 2015, Order, "[a]lthough a complaint need not contain detailed factual allegations, it must contain sufficient factual material 'to raise a right to relief above the speculative level.'" (Doc. 138, p. 9) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "At a minimum, a complaint should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Put another way, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. When assessing whether a plaintiff has stated a claim, the Court must construe a complaint in the light most favorable to the plaintiff and accept all well-pleaded facts alleged in the complaint as true. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).

The Court has repeatedly applied these standards to Plaintiff's Complaint and found that she has not stated a claim for relief.  The Court has explained that "the only specific allegations in the Complaint are against the Glynn County Juvenile Court, the State of Georgia, an unidentified DFCS worker, and Judge Rountree."  (Doc. 138, p. 10.)  Moreover, the Court has found that "[b]eyond conclusory assertions of legal violations, Plaintiff[ ] proffer[s] no averments showing a plausible claim for relief, under any of [her] 40-plus theories of liability.  Even for the liberal standard under which pro se complaints are interpreted, the allegations in Plaintiff['s] Complaint are conclusory, speculative, unspecific, and fall far short of the standard for alleging a plausible claim for relief."  (Doc. 107, pp. 13–14.)

Even after the Court has given Plaintiff several opportunities to supplement and clarify her Complaint, her claims still suffer from these fatal flaws.  The Complaint does not provide sufficient factual matter to explain what, if anything, the remaining Defendants have done wrong.  Consequently, Plaintiff's Complaint is due to be dismissed for failure to state a plausible claim for relief against the remaining Defendants.

## IV.    Dismissal for Failure to Comply with this Court's Orders and Failure to Prosecute.

The Court may dismiss a plaintiff's claims *sua sponte* pursuant to either Federal Rule of Civil Procedure 41(b) ("Rule 41(b)") or the Court's inherent authority to manage its docket.  Link v. Wabash R.R. Co., 370 U.S. 626 (1962);[8] Coleman v. St. Lucie Cty. Jail, 433 F. App'x 716, 718 (11th Cir. 2011) (citing Fed. R. Civ. P. 41(b) and Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1337 (11th Cir. 2005)).  In particular, Rule 41(b) allows for the involuntary dismissal of a plaintiff's claims where she has failed to prosecute those claims,

---

[8]  In Wabash, the Court held that a trial court may dismiss an action for failure to prosecute "even without affording notice of its intention to do so."  370 U.S. at 633.  Nonetheless, in the case at hand, the Court advised Plaintiff on several occasions that her failure to abide by this Court's Orders and her failure to clarify her claims would result in dismissal of this action.

comply with the Federal Rules of Civil Procedure or local rules, or follow a court order. Fed. R. Civ. P. 41(b); see also Coleman, 433 F. App'x at 718; Sanders v. Barrett, No. 05-12660, 2005 WL 2640979, at *1 (11th Cir. Oct. 17, 2005) (citing Kilgo v. Ricks, 983 F.2d 189, 192 (11th Cir. 1993)); cf. Local R. 41.1(b) ("[T]he assigned Judge may, after notice to counsel of record, *sua sponte* . . . dismiss any action for want of prosecution, with or without prejudice[,] . . . [based on] willful disobedience or neglect of any order of the Court."). Additionally, a district court's "power to dismiss is an inherent aspect of its authority to enforce its orders and ensure prompt disposition of lawsuits." Brown v. Tallahassee Police Dep't, 205 F. App'x 802, 802 (11th Cir. 2006) (quoting Jones v. Graham, 709 F.2d 1457, 1458 (11th Cir. 1983)). The Eleventh Circuit Court of Appeals has upheld Rule 41(b) dismissals where the plaintiff failed to comply with an order to amend his complaint to comport with Federal Rule of Civil Procedure 8's pleading requirements. See Popham v. Cobb Cty., 392 F. App'x 677, 680–81 (11th Cir. 2010).

It is true that dismissal with prejudice for failure to prosecute is a "sanction . . . to be utilized only in extreme situations" and requires that a court "(1) conclud[e] a clear record of delay or willful contempt exists; and (2) mak[e] an implicit or explicit finding that lesser sanctions would not suffice." Thomas v. Montgomery Cty. Bd. of Educ., 170 F. App'x 623, 625–26 (11th Cir. 2006) (quoting Morewitz v. West of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Lux.), 62 F.3d 1356, 1366 (11th Cir. 1995)); see also Taylor v. Spaziano, 251 F. App'x 616, 619 (11th Cir. 2007) (citing Morewitz, 62 F.3d at 1366). By contrast, dismissal without prejudice for failure to prosecute is not an adjudication on the merits, and, therefore, courts are afforded greater discretion in dismissing claims in this manner. Taylor, 251 F. App'x at 619; see also Coleman, 433 F. App'x at 719; Brown, 205 F. App'x at 802–03.

While the Court exercises its discretion to dismiss cases with caution, dismissal of this action is warranted. See Taylor, 251 F. App'x at 620–21 (upholding dismissal without prejudice for failure to prosecute because plaintiffs insisted on going forward with deficient amended complaint rather than complying, or seeking an extension of time to comply, with court's order to file second amended complaint); Brown, 205 F. App'x at 802–03 (upholding dismissal without prejudice for failure to prosecute where plaintiff failed to follow court order to file amended complaint and court had informed plaintiff that noncompliance could lead to dismissal).

This Court has been exceedingly patient with Plaintiff over the more than two years that this case has been pending. At every turn, it has provided her with an opportunity to respond to the Defendants' Motions to Dismiss as well as numerous chances to restate her claims. At this stage, without a more definite statement of Plaintiff's claims, this Court simply cannot move forward with this case. As the Court stated in its Order dismissing some Defendants on May 20, 2015, "[b]eyond conclusory assertions of legal violations, Plaintiff proffers no averments showing a plausible claim for relief, under any of her 40-plus theories of liability." (Doc. 140, p. 8.) Moreover, the Court has repeatedly given Plaintiff the opportunity to specify which Defendants violated her rights, to set forth specific allegations against those Defendants, and to state which rights those Defendants violated. (Docs. 74, 144.) Despite these opportunities, Plaintiff has not made any effort to remedy the deficiencies in her Complaint. Accordingly, Defendants cannot respond to her claims, and the Court cannot adjudicate them.

Furthermore, Plaintiff has repeatedly and willfully failed to adhere to this Court's Orders. For instance, rather than comply with the Court's September 2, 2015, show cause Order, Plaintiff argued that she had already stated her claim. She did nothing to remedy the deficiencies pointed

out by the Court. Consequently, given Plaintiff's refusal to follow the Orders of the Court and the status of her claims, no sanction short of dismissal will remedy her noncompliance.

## VI.     Dismissal of State Law Claims

Finally, to the extent Plaintiff seeks to invoke this Court's jurisdiction based on provisions of Georgia law, she cannot do so. This Court has jurisdiction over claims involving a federal question or those claims involving parties who are citizens of different states. See 28 U.S.C. §§ 1331 & 1332. As state law claims would not satisfy either of these jurisdictional prerequisites, Plaintiff's state law claims should be **DISMISSED**.[9]

## V.     Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's Order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or

---

[9] Even if the Court had jurisdiction over Plaintiff's federal claims, to the extent Plaintiff asserts other tort claims (such as legal malpractice) against the Defendants; those would predominate and should be asserted in state court. 28 U.S.C. § 1367 codifies the doctrines formerly known as pendent and ancillary jurisdiction. See Palmer v. Hosp. Auth. of Randolph Cty., 22 F.3d 1559, 1562 n.3 (11th Cir. 1994). Section 1367(c) lists specific circumstances in which a district court may decline to exercise supplemental jurisdiction over a state law claim joined with a claim over which the court has original jurisdiction. One of those circumstances is when the state claim "substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2).

argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Or, stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal in this action would not be taken in good faith. Thus, Plaintiff should be **DENIED** *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons stated above, I **RECOMMEND** that the Court **DISMISS** all claims in this action against all remaining Defendants. I further recommend that the Court **DENY** Plaintiff leave to appeal *in forma pauperis* and **DENY AS MOOT** all pending motions in this case.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of the docket sheet in this case as well as a copy of this Report and Recommendation upon the Plaintiff.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 10th day of December, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA